United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| In re:<br><br>Tiara Hill,<br><br>Debtor. | Case No. 17 BK 27598<br><br>Chapter 13<br><br>Judge: Hon. Jack B. Schmetterer |
|---|---|

### MEMORANDUM OPINION ON DEBTOR'S OBJECTION TO CLAIM #3 OF GREATER CHICAGO FINANCE COMPANY [DKT NO. 29]

This matter comes before the Court on Debtor Tiara Hill's ("Debtor") Objection to Proof of Claim #3 of Greater Chicago Finance Company ("Greater Chicago"). Debtor seeks to disallow Greater Chicago's claim, insofar as it is a secured claim.

For the reasons discussed below, Debtor's Objection will be sustained. The following undisputed facts appear from the pleadings of the parties.

### UNDISPUTED FACTS

1. Debtor's instant Chapter 13 case was filed on September 14, 2017. (Dkt. No. 1.)
2. Debtor had filed a previous Chapter 13 bankruptcy case on December 22, 2015, which was dismissed on November 16, 2016 for failure to make plan payments. (Dkt. No. 29.)
3. The plan filed in the prior case treated Greater Chicago as a secured creditor and it was being paid pursuant to Section E3 of Debtor's plan. (Dkt. No. 29.)
4. Greater Chicago's claim arose from a lien created on October 8, 2015, as to a vehicle purchased within 910 days of the filing of the instant bankruptcy petition, secured by a 2008 Chevrolet Impala. Greater Chicago's secured claim in the earlier case was for $8,844.01 with an interest rate of 6.5% to be paid through Debtor's plan. (Dkt. No. 30.)
5. In Debtor's instant case, Greater Chicago filed its secured Claim No. 3–1 on October 11, 2017, claiming to be a secured creditor with a claim amount of $7,293.76. (Dkt. No. 29.)
6. During the pendency of Debtor's prior case, the Debtor's vehicle was impounded by the City of Chicago due to post-bankruptcy parking tickets. (Dkt. No. 29.)
7. Both Debtor and Greater Chicago received notice of the impoundment. (Dkt. No. 30.)
8. Greater Chicago contacted Debtor's attorney, and was told that there would be no change as to the debtor's treatment of their claim in the pending plan, even if no stay relief was granted. (Dkt. No. 30.)
9. Greater Chicago did not file any motion to lift the automatic stay or otherwise seek to retrieve the vehicle from the City of Chicago. (Dkt. No. 36.)

1

10. Debtor also took no action to recover the vehicle from the City of Chicago. (Dkt. No. 36.)
11. At some date, though neither party has indicated in its pleadings when, the City of Chicago completely crushed Debtor's vehicle in order to dispose of it. (Dkt. No. 29.)
12. On December 20, 2017, Debtor objected in this case to Claim No. 3–1 of Greater Chicago to the extent it continued to assert that it is a secured creditor. Debtor argues in her Objection that because the vehicle has been crushed and is no longer part of the estate, Greater Chicago's claim should be treated as a general unsecured claim. (Dkt. No. 29.)
13. On January 10, 2018, Greater Chicago filed its Response to Debtor's Objection. Greater Chicago argued that it did not seek to recover the vehicle from the City of Chicago because it was barred from doing so pursuant to the Automatic Stay, and that it did not seek stay relief because Debtor's attorney indicated that the treatment of Greater Chicago's claim would not be changed. Greater Chicago asserts that because it could not have known that Debtor would take no steps to recover the vehicle, and because it received no advance notice from the City of Chicago that the vehicle would be crushed, it should be paid in full on its secured claim. Greater Chicago further alleges that Debtor took no action to recover the vehicle and its current attempt to disallow its secured claim indicates that the plan has not been proposed in good faith.
14. Alternatively, Greater Chicago asserts that it should be treated as a specifically classified unsecured claimant. If Debtor can provide proof that the vehicle was crushed, it argues, it should not be paid less than 100% of its claim and it should not be deprived of its claim because of Debtor's failure to recover the vehicle. Greater Chicago does not explain why it should be afforded special classification as an unsecured creditor and cites no authority supporting its contention. Indeed, Greater Chicago does not even articulate what it seeks when it says it should be granted status as a "specifically classified unsecured claim." (Dkt. No. 30.)
15. On January 23, 2018 Debtor filed her Reply. Debtor argues that in the prior bankruptcy case, Greater Chicago "buried its head in the sand," and lost its rights by refusing to move for stay relief once it was informed of the impoundment. Debtor states that she was not able to recover the vehicle from the impound because it would cost her nearly $2,000.00, an amount she was unable to pay at the time. Debtor argues that there is no

legal basis for Greater Chicago to be considered a secured creditor, pursuant to 11 U.S.C. § 506(a) and *In re Hauter*, No. 10–70234, 2010 WL 4115476 (Bankr. C.D. Ill. Oct. 18, 2010) (holding that in order to be a secured creditor and have an allowed secured claim, collateral must be in existence).

16. Additionally, Debtor argues that if § 506 does not apply in this case, the Debtor may surrender whatever interest she has in the vehicle and Greater Chicago will still only have a general unsecured claim. Debtor further argues that there is no reason that Greater Chicago's unsecured claim should be treated in any special manner pursuant to 11 U.S.C. § 1322. Finally, Debtor asserts that she has complied with 11 U.S.C. § 1325 because she has proposed her plan in good faith, and Greater Chicago's argument that it is untreated in the plan is untrue because it is treated as general unsecured creditor. (Dkt. No. 36.)

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B).

## DISCUSSION

The dispute between Debtor and Greater Chicago centers around the extent to which, if at all, Greater Chicago remains a secured creditor, even though Debtor's vehicle was crushed by the City of Chicago and now has no value. Greater Chicago has not identified any authority or set forth any particular argument as to why it should be considered a secured creditor in this case, other than to blame Debtor for the act of not recovering the vehicle. By the very definition of "secured creditor," it does not appear that Greater Chicago can claim that status. Generally speaking, "a claim cannot be a 'secured claim'. . . unless it is secured by a 'lien' on some specific item of property in which the estate has an interest, or, alternatively, is a claim that is subject to a right of setoff." 16 *Collier on Bankruptcy* ¶ 506.03. Given that the specific item of property securing the loan no longer exists, Greater Chicago cannot contend that it is a secured creditor. Several bankruptcy courts have held that, "[c]ase law is clear that the existence of collateral is necessary both to support the allowance of a secured claim and for a creditor to be treated as a secured creditor in a plan. *In re Hauter*, No. 10-70234, 2010 WL 4115476, at *2

3

(Bankr. C.D. Ill. Oct. 18, 2010); *see also In re Elliott*, 64 B.R. 429, 431 (Bankr. W.D. Mo. 1986); *In re Gabor*, 155 B.R. 391, 394 (Bankr. N.D. W.Va. 1993); *In re E.P. Fournier Co., Inc.*, 225 B.R. 276, 277 (Bankr. D. R.I. 1998). Additionally, the Illinois U.C.C., upon which secured creditors' rights are based, supports this analysis because it states that while a creditor's perfected security interest may continue in the proceeds of the disposition of collateral, including insurance proceeds, such a security interest merely, "attaches to any *identifiable* proceeds of collateral." Illinois U.C.C., 810 ILCS 5/9-315(a)(2) (emphasis added). Neither party has identified any such proceeds (insurance payments or otherwise), so it appears that Greater Chicago's security interest did not continue to attach to anything at all, rendering it a general unsecured creditor.

Greater Chicago has not cited any authority supporting its assertion that it should continue to be treated as a secured creditor. Its primary argument is that because Debtor took no action to recover the vehicle from being impounded by the City of Chicago, the Debtor somehow acted wrongfully and should thus be required to pay the full amount of Greater Chicago's claim. What Greater Chicago fails to understand with regards this line of argument is that Debtor was under no obligation to take any action to recover the vehicle. The Chicago Municipal Code states that:

> a. Unless a vehicle is held pursuant to applicable state, federal or any other law, or a court order or warrant that authorizes the continued impoundment of the vehicle, **the owner or other person entitled to possession of a vehicle impounded pursuant to Section 9–92–030 may obtain immediate release of the vehicle** by paying the full amount of the applicable towing and storage fees, as provided in subsection (b), plus all amounts due for outstanding final determinations of parking and/or compliance violations (if the vehicle is also subject to immobilization for unpaid final determinations of parking and/or compliance violations). Regardless of whether the owner or other person entitled to possession obtains immediate release of the vehicle through making full payment, such person may request a hearing before the department of administrative hearings to be held in accordance with Section 2–14–135 of this Code.

Chicago Mun. Code § 9–92–080 (emphasis added). The Chicago Municipal Code also explicitly details what happens to vehicles which are not recovered from impoundment by the owner or another party–in–interest:

> a. **Whenever an abandoned, lost, stolen, or other impounded motor vehicle remains unclaimed by the registered owner or other person entitled to possession for a period of 15 days after notice has been given** pursuant to Section

4

> 9–92–070(a) or (b), **the superintendent of police or the commissioner of streets and sanitation shall authorize the disposal or other disposition of such unclaimed vehicles** as provided in this section; provided, however, that the registered owner may request from the department of streets and sanitation one extension of 15 days before a vehicle is sold or otherwise disposed of. The department of streets and sanitation shall honor such request and shall not sell or otherwise dispose of a vehicle during the 15-day extension period.

Chicago Mun. Code § 9–92–100 (emphasis added). While Greater Chicago argues that it did not receive proper notice that the car would potentially be disposed of by the City of Chicago, it did not attach any documents to its pleadings showing as much, and did not file any claim against the City asserting that destruction of the vehicle was wrong. Destruction is plainly part of the City's statutory scheme with regards to impounded vehicles. Thus, Greater Chicago, if it truly wanted to protect its collateral as it says in its Response, could have easily discovered that it had the right to recover the vehicle from the City of Chicago before it was crushed and saved the car. Instead, it chose to, "stick its head in the sand and pretend it would not lose any rights." *In re Pence*, 905 F.2d 1107 (7th Cir. 1990).

Greater Chicago relied on Debtor's attorney's asserted promise in her prior bankruptcy case that treatment of the creditor in the plan in the Debtor's earlier bankruptcy case would not change absent stay relief. However, that is not the same thing as a promise to recover the vehicle or to treat Greater Chicago as a secured creditor in a subsequent bankruptcy case. Importantly, Debtor's attorney made no promise that there would be an attempt by the Debtor to recover the vehicle and Debtor states in her Reply that she was unable to pay the required fees to release the vehicle from impound.

Thus, Greater Chicago's assertion that it is entitled to secured creditor status simply because Debtor was unwilling or unable to recover the car from the City of Chicago is incorrect. Under a similar set of facts, a bankruptcy judge in this district determined that a debt stemming from an auto loan was not rendered nondischargeable simply because the debtor was unable to pay the required fees to release the vehicle from impound. *In re Frazier*, 551 B.R. 410, 419 (Bankr. N.D. Ill. 2016) (stating that where "the Debtor's conduct was motivated solely by her financial situation," there had been no showing that the conduct was willful and malicious pursuant to 11 U.S.C. § 523(a)(6)). Debtor has stated that she was not able to recover the vehicle between her bankruptcy cases because she was unable to pay the nearly $2,000.00 in fees that the City of Chicago asked of her. While the situation is not entirely analogous to that in *In re*

5

*Frazier*, it is clear on the record that Debtor's inaction with regards to recovering the car from the City of Chicago was solely due to her financial situation. Greater Chicago could have recovered the vehicle as a party-in-interest pursuant to the Chicago Municipal Code, but chose not to act, despite being in a better financial situation than the Debtor to do so. The collateral was destroyed, in large part, thanks to Greater Chicago's inaction. Thus, with no collateral left to secure its claim, Greater Chicago will be deemed to be a general unsecured creditor.

Greater Chicago raises two other minor issues. First, it asserts that it should be treated as a specially classified unsecured creditor, though it does not articulate precisely what sort of special classification it seeks. As Debtor has indicated, Greater Chicago is not entitled to any special classification at all. Pursuant to 11 U.S.C. § 1322(b)(1), a debtor may, "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated." 11 U.S.C. § 1322(b)(1). Under 11 U.S.C. § 1122 a claim may be so designated if it is, "substantially similar to the other claims or interest of such class." 11 U.S.C. § 1122. Again, Greater Chicago has not explained what sort of special treatment it seeks. However, it contends that it should not be paid less than 100% of its claim amount. Allowing that sort of classification would likely discriminate unfairly against other unsecured creditors and would be in contravention of 11 U.S.C. § 1322(b)(1). Thus, Greater Chicago is not entitled to special treatment as an unsecured creditor.

Second, Greater Chicago argues that Debtor's plan was not proposed in good faith pursuant to 11 U.S.C. § 1325. "Good faith only means full disclosure and an intent to make the proposed plan payments." *Matter of Smith*, 848 F.2d 813, 819 (7th Cir. 1988). Courts seeking to determine whether a debtor's plan has been proposed in good faith should look at the totality of circumstances. *Id.* at 821. The party arguing a lack of good faith bears the burden of their challenge of debtor's proposed plan. *In re Colon*, 561 B.R. 682, 686 (Bankr. N.D. Ill. 2016). Greater Chicago relies on Debtor's inaction in recovering the vehicle from the City of Chicago and also states that it is untreated in Debtor's proposed Chapter 13 plan. Greater Chicago has failed to meet its burden showing that Debtor has acted without good faith with regards to her plan. As discussed above, Debtor's inaction with regards to the vehicle is excusable given that it stemmed entirely from her financial inability to pay the fees to the City. Greater Chicago has not shown that Debtor lied or misrepresented anything with regards to its claim, she simply could not get the car released by the City of Chicago due to her financial difficulties. Greater Chicago's

confusion as to its rights with regards to the impoundment of the vehicle does not constitute bad faith by the Debtor. Furthermore, Greater Chicago did not show that their debt remains untreated in Debtor's proposed Chapter 13 plan. Debtor's most recent amended plan, filed on December 8, 2017, lists $28,611.65 in general unsecured debt. Greater Chicago has not shown that their $7,293.76 claim is untreated, and Debtor's Reply indicates that the claim is simply not treated as a secured debt, implying that Greater Chicago's claim is included in the $28,611.65 amount.

Thus, Greater Chicago has not shown that it is entitled to be treated as anything other than a general unsecured creditor. It has also failed to allege sufficiently facts supporting its assertion that Debtor's plan was not proposed in good faith.

## CONCLUSION

For the foregoing reasons, Debtor's Objection to Claim #3 of Greater Chicago Finance Company is sustained. Greater Chicago's Claim No. 3-1 will be deemed to be a general unsecured claim, by separate order to be entered concurrently herewith.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 17 day of February, 2018